# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

SHIRELY PHELPS-ROPER, )
)
    Plaintiff, )
)
v. ) No. 06-4156-CV-C-FJG
)
JEREMIAH W. NIXON, et al., )
)
    Defendants. )

## ORDER

Pending before the Court are (1) Plaintiff's Motion for Preliminary Injunction to Prevent Defendants Nixon and Blunt from Enforcing § 578.501 (Doc. No. 3); (2) Plaintiff's Motion for Preliminary Injunction to Prevent Defendant Goodwin from Enforcing § 578.501 in an Unconstitutionally Overbroad Manner (Doc. No. 4); (3) Plaintiff's Motion for Oral Argument on Plaintiff's Motion for Preliminary Injunction Against Defendants Nixon and Blunt (Doc. No. 14); and (4) Non-Party Judicial Watch Inc.'s Motion for Leave to File Brief Amicus Curiae in Support of Defendants (Doc. No. 35).

As a preliminary matter, the Court will **GRANT** non-party Judicial Watch Inc.'s Motion for leave to file brief amicus curiae, and the brief filed as Doc. No. 36 will be treated as properly filed. Moreover, this Court indicated in its previous Order (Doc. No. 28) that it would defer ruling on plaintiff's motion for oral argument until all the briefs on the motions for preliminary injunction had been filed. Now that the Court has had an opportunity to review the parties' briefs, the Court finds that oral argument is not necessary at this time. Therefore, plaintiff's motion for oral argument (Doc. No. 14) will be **DENIED**.

The Court will now turn to the merits of the motions for preliminary injunction.

## I. Plaintiff's Motion for Preliminary Injunction Against Defendants Nixon and Blunt (Doc. No. 3)

### A. Background

Plaintiff, a member of the Westboro Baptist Church in Topeka, Kansas, filed this lawsuit on July 21, 2006. Plaintiff alleges that the members of her church believe that homosexuality is a sin and an abomination. See Doc. No. 1, ¶ 7. She further alleges that church members believe that God is punishing America for the sin of homosexuality by killing Americans, including soldiers. Id. Plaintiff states that she and other church members express their religious views through picketing and protesting. Id. at ¶ 8. She indicates that the purpose of picketing and protesting near funerals is to use an available public platform to publish the church members' religious message: that God's promise of love and heaven for those who obey him in this life is counterbalanced by God's wrath and hell for those who do not. Id. at ¶ 9. Plaintiff indicates that funerals are the only place where her religious message can be delivered in a timely and relevant manner. Id.[1]

Missouri recently enacted Mo. Rev. Stat. § 578.501 (2006) (which criminalizes picketing "in front or about" a funeral location) and Mo. Rev. Stat. § 578.502 (2006) (which, in the event 578.501 is declared unconstitutional, criminalizes picketing within 300 feet of a funeral location). Plaintiff states that these laws invade her First Amendment rights. In her complaint, plaintiff seeks (1) entry of a declaratory judgment finding Mo. Rev. Stat. §§ 578.501 and 578.502 unconstitutional; (2) issuance of a preliminary and permanent injunction enjoining enforcement of § 578.501; (3) upon making a final declaration that § 578.501 is void or unconstitutional, declaring that § 578.502 is unconstitutional, and

---

[1]Although the exact content of plaintiff's group's speech at funerals of soldiers is not part of the record in this matter to-date, the Court notes that in previous funeral protests, plaintiff's church has conveyed messages such as "God Hates Fags"; "No Fags in Heaven"; "Fags are Worthy of Death, Rom. 1:32"; "Turn or Burn"; "Fag Church"; "God's Hate is Great"; and "Hate is a Bible Value." See Phelps v. Hamilton, 122 F.3d 1309, 131 (10th Cir. 1997).

entering preliminary and permanent injunctions enjoining enforcement of § 578.502; and (4) an award of costs, including reasonable attorneys fees, pursuant to 42 U.S.C. §1988.

Plaintiffs move for a preliminary injunction to prevent defendants Nixon and Blunt from enforcing § 578.501. They further request bond be set in the amount of $1.00.

**B.	Standard**

The Eighth Circuit uses a four-prong test to determine whether to grant a temporary restraining order. See Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981). The Court considers: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. Id.

1.	Success on the Merits

Plaintiff argues she is likely to succeed on the merits as Missouri's funeral protest statute is an unconstitutional abridgement of her First Amendment right to free speech. In examining such a claim, the Court must first determine whether the restriction on speech is content-based or content-neutral in order to determine the proper standard of review. Where the speech restriction is content-based, it is subject to strict scrutiny and can be upheld only when necessary to serve a compelling state interest and is narrowly drawn to achieve that end. Turner Broadcasting System, Inc. v. Federal Communications Commission, 512 U.S. 622, 642, 653 (1994). On the other hand, where the restriction is content-neutral, it is subject to intermediate scrutiny and survives if it is narrowly tailored to serve a significant government interest and leaves open ample alternative channels for communication. Turner, 512 U.S. at 642; Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Although plaintiff contends that § 578.501 is a content-based speech restriction, a review of the text of the statute compels the Court to find that the statute's speech

3

restrictions are content-neutral.  See City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 448 (2002)(J. Kennedy, concurring)(noting that "whether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based."); see also Hill v. Colorado, 530 U.S. 703, 720 (2000)(finding the legislature's intentions irrelevant when a statute was facially neutral). The text of § 578.501 is:

> (1) This section shall be known as "Spc. Edward Lee Myers' Law."
>
> (2) It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral.  Each day on which a violation occurs shall constitute a separate offense.  Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.
>
> (3) For the purposes of this section, "funeral" means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead.[2]

Although § 578.501 indicates that it is named after Spc. Edward Lee Myers, a deceased soldier whose funeral was protested by members of plaintiff's church, this reference alone is insufficient to support an inference that the statute is a content-based restriction on speech, as the statute itself does not describe speech by content.  Thus, this Court will examine whether § 578.501 survives intermediate scrutiny, analyzing whether

---

[2] Section 578.502 contains the same provisions as § 578.501, except that the language "in front of or about" from § 578.501 is modified to read "within three hundred feet of or about" in § 578.502.  Section 578.503 further provides: "The enactment of section 578.502 shall become effective only on the date the provisions of section 578.501 are finally declared void or unconstitutional by a court of competent jurisdiction and upon notification by the attorney general to the revisor of statutes."

4

it is narrowly tailored to serve a significant government interest and leaves open ample alternative channels for communication.[3]

Initially, the Court notes that defendants assert a significant government interest; protecting the rights of Missouri citizens to be free from interference by other citizens while they mourn the death of friends or family. As noted by defendants, in Frisby v. Schultz, 487 U.S. 474, 482 (1988), the Supreme Court recognized that the state had an interest in protecting citizens in their residences from unwanted communications. Defendants argue that spectators to a funeral are more captive than citizens in their own homes, as a citizen in his or her home could leave or otherwise avoid communications outside his or her residence, whereas a funeral spectator cannot leave the funeral or procession without missing the opportunity to pay last respects to the deceased. Although the state must make a "showing that substantial privacy interests are being invaded in an essentially intolerable manner" when limiting discourse in efforts to protect others, Cohen v. California, 403 U.S. 15, 21 (1971), defendants note that plaintiff's actions of picketing soldiers' funerals and belittling the sacrifices made by soldiers are intolerable actions, making protection of the funeral attendees a substantial interest for the state. In addition, amicus Judicial Watch notes that Missouri also has an interest in protecting funeral attendees' First Amendment rights to free exercise of religion. For all the foregoing reasons, the Court finds that plaintiff has not demonstrated a likelihood of success in arguing that defendants do not have a

---

[3]Defendants also argue in their response that plaintiff's protests constitute "fighting words" and are completely unprotected by the First Amendment. The Court will not issue any findings at this time as to whether plaintiff's protests constitute "fighting words," as the contents of plaintiff's protests are not properly in the record as of this date. Instead of looking at the content of plaintiff's speech, the Court finds the better approach at this time is to look to the language of Missouri's statute.

5

significant government interest.

Defendants also argue that the statute is narrowly tailored to limit no more speech than necessary, leaving plaintiff alternative channels through which to convey her message. For a statute to be narrowly tailored, it must not "burden substantially more speech than is necessary to further the government's legitimate interests." Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 478 (1989). "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Frisby, 487 U.S. at 485. However, the time, place, and manner restrictions imposed by the statute to not have to be the least restrictive or least intrusive means of serving the government's legitimate interests. See Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989).

Here, plaintiff argues that the statute impermissibly prohibits speech on private property and in public fora, noting in particular that § 578.501 creates a floating buffer zone around the path of any funeral procession.[4] However, this Court finds that the language of § 578.501 is similar to that upheld by the Supreme Court in Frisby, 487 U.S. at 85 ("in front of" a particular residence), and by the Eighth Circuit in Douglas v. Brownwell, 88 F.3d 1511 (8th Cir. 1996) (upholding a ban on picketing "before, about, or immediately adjacent to" a residence)). Furthermore, buffer zones have been found to be appropriate means to restrict certain speech. Madsen v. Women's Health Center, Inc., 512 U.S. 753, 769 (1994)(approving 36-foot buffer zone around entrance to women's clinic); Hill v. Colorado, 530 U.S. 703 (2000) (approving statute creating a buffer zone of eight feet around any

---

[4]Although plaintiff argues that her message is directed at the general public, and not at funeral attendees (and therefore should be subject to different standards than those set forth by the defendants), the Court finds that this argument would be better taken after discovery is complete and after a record could be made.

6

individual within 100 feet of the entrance of a health facility in order to engage in oral protest or distribute leaflets, etc). The Court further notes that plaintiff has alternative channels through which she can deliver her message; for instance, plaintiff may still protest outside of the times and places prohibited by the statute. Further, Missouri's funeral protest law does not create a barrier to delivering to the public, by other means, plaintiff's intended message concerning the evils of homosexuality. This Court finds that plaintiff has not demonstrated that she is likely to succeed on the merits of her argument that the statute is not narrowly tailored.

Plaintiff also argues that § 578.501 is both overbroad and vague. Plaintiff states that the statute is overbroad given that it prevents all picketing and protesting at certain times and places regardless of whether the picketing and protesting constitutes "fighting words." Plaintiff also asserts that she has received different interpretations of the law from different law enforcement officials in the state of Missouri. As a preliminary note, the Court agrees with defendants that absent a factual record, injunctive relief should not be granted on plaintiff's assertion that different law enforcement officers have given plaintiff different interpretations of the law. Furthermore, the Court will not find at this early stage of the proceedings that the law's intent is to target only fighting words. The Court declines to find that plaintiff is likely to succeed on the merits of her argument that the statute is overbroad.

Finally, plaintiff argues that § 578.501 is unduly vague, in that (a) the "in front of or about" language is open to broad interpretation, (b) it would be impossible to comply with the "following cessation" requirement without a publication requirement in the statute regarding the ending time of a funeral; and (c) the statute fails to define "picketing." However, as defendants note, the terms and phrases "picketing," "following the cessation,"

7

and "in front of or about" all have plain meanings that a person of ordinary intelligence could clearly ascertain. The Court agrees with defendants for purposes of this motion, and finds plaintiff has not demonstrated that she is likely to succeed on the merits of her argument that the language of the statute is unconstitutionally vague.

Therefore, for all the foregoing reasons, this Court finds that plaintiff has not demonstrated a likelihood of success on the merits of her claims regarding the constitutionality of § 578.501.

B. Irreparable Harm to Movant

Although violations of the First Amendment constitute irreparable harms (see Elrod v. Burns, 427 U.S. 347, 373 (1976); Iowa Right to Life Committee, Inc. v. Williams, 187 F.3d 963 (8th Cir. 1999)), plaintiff has not demonstrated a substantial likelihood of success on her First Amendment claims. Further, plaintiff has not demonstrated that other venues are insufficient for conveying her message. Therefore, the Court finds that plaintiff has not demonstrated irreparable harm, and this factor weighs against granting a preliminary injunction.

C. Balance of Harms/Public interest

Plaintiff indicates that the state would suffer no injury if the preliminary injunction were issued, noting that Missouri has other statutes available to punish actual disruptions of funerals that overstep the bounds of peaceful protest. Plaintiff further states that the injunction is in the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994). Notably, however, the Court finds that at this stage of the proceedings, plaintiff has not demonstrated that Missouri's funeral protest

8

statute violates her constitutional rights.  Further, defendants indicate that an injunction will harm both the interests of the state of Missouri and the public, in that "Missouri's interest in providing safe, secure, and dignified funerals to its citizens far outweighs any interest the WBC has in protesting and disparaging such events." See Doc. No. 31, p. 29.  This Court agrees with defendants, and finds that both the balance of harms among the parties and the public interest weigh toward denial of the motion for preliminary injunction.

For all the foregoing reasons, plaintiff's motion for preliminary injunction (Doc. No. 3) is **DENIED.**

II. **Plaintiff's Motion for Preliminary Injunction to Prevent Defendant Goodwin from Enforcing § 578.501 in an Unconstitutionally Overbroad Manner (Doc. No. 4).**

Defendant Goodwin is the prosecuting attorney for Carroll County, Missouri.  Plaintiff states that defendant Goodwin informed her that he interpreted § 578.501 as prohibiting all picketing and protests within one hour of a funeral and threatened anyone picketing or protesting within one hour of a funeral with being arrested and held for 24 hours.  He informed plaintiff's group that they could protest at a location more than 400 feet away from the site of the funeral, so long as no one continued to protest within an hour of the funeral. Plaintiff alleges that this interpretation of § 578.501 is overbroad.

Defendant never filed a response to plaintiff's motion for preliminary injunction. Instead, on November 2, 2006, defendant Goodwin and plaintiff filed a stipulation for entry of consent judgment (Doc. No. 27).  The proposed consent judgment submitted by the parties would permanently enjoin Defendant Goodwin, in his official capacity as Prosecuting Attorney for Carroll County, and his employees, representatives, agents,

9

servants, assigns, and successors, from enforcing or attempting to enforce § 578.501 and § 578.502. Plaintiff agreed to waive any claim to attorney fees. Plaintiff states she will move to withdraw her motion for preliminary injunction upon entry of the consent judgment.

On November 17, 2006, Defendants Jay Nixon and Matt Blunt filed suggestions in opposition to the entry of consent judgment as to plaintiff and defendant Goodwin. See Doc. No. 32. In this opposition, defendants note that the prosecutor has a duty to investigate, arrest, and prosecute violations of law that come to his knowledge and for which the police or private complainants have taken no action. State ex inf. McKittrick v. Graves, 144 S.W.2d 91 (Mo. 1940); State ex inf. McKittrick v. Wymore, 132 S.W.2d 979 (1939). Defendants suggest that prosecutorial discretion is not unfettered, and the proposed consent judgment is improper because it (1) restricts the current prosecutor's ability to fulfill his duties as prosecutor; (2) infringes on the rights and duties of his successors as a permanent injunction; and (3) at this stage of the litigation such an injunction is improper as the remaining defendants are defending the validity of the law and the Court has not yet ruled on its validity.

This Court is also concerned about entry of the proposed consent judgment at this early stage of the proceedings, when the Court has not yet entered a final judgment as to the validity of the law, and has denied plaintiff preliminary injunctive relief. Accordingly, the Court will defer ruling as to the propriety of (1) plaintiff's motion for preliminary injunctive relief against defendant Goodwin (Doc. No. 4), and (2) the proposed consent judgment (Doc. No. 27), until a final judgment has been entered as to the constitutionality of Missouri's funeral protest statutes.

**III.     Conclusion**

For all the foregoing reasons:

(1) Plaintiff's Motion for Preliminary Injunction to Prevent Defendants Nixon and Blunt from Enforcing § 578.501 (Doc. No. 3) is **DENIED**;

(2) A ruling on Plaintiff's Motion for Preliminary Injunction to Prevent Defendant Goodwin from Enforcing § 578.501 in an Unconstitutionally Overbroad Manner (Doc. No. 4) is **DEFERRED** until a final judgment has been entered as to the constitutionality of Missouri's funeral protest statutes;

(3) Plaintiff's Motion for Oral Argument on Plaintiff's Motion for Preliminary Injunction Against Defendants Nixon and Blunt (Doc. No. 14) is **DENIED**; and

(4) Non-Party Judicial Watch Inc.'s Motion for Leave to File Brief Amicus Curiae in Support of Defendants (Doc. No. 35) is **GRANTED.**

**IT IS SO ORDERED.**

      /s/ FERNANDO J. GAITAN, JR.
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 1/26/07.
Kansas City, Missouri.

11

Case 2:06-cv-04156-FJG   Document 47   Filed 01/26/07   Page 11 of 11