IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| SHIRLEY PHELPS-ROPER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-4156-CV-C-FJG |
| | ) | |
| CHRIS KOSTER, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION MOTION TO DISMISS OF DEFENDANTS KOSTER, NIXON, AND KEATHLEY**

Plaintiff respectfully submit the following in opposition to the motion to dismissing filed by Defendants Koster, Nixon, and Keathley (Doc. #110):

Argument

"The standard for a district court to employ in ruling a motion to dismiss is clear. A district court must accept the allegations contained in the complaint as true." *Breedlove v. Earthgrains Baking Cos.*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). "[A]ll reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Breedlove*, 140 F.3d at 799 (relying on *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). Plaintiff has made sufficient allegations to survive the motion to dismiss.

I.  The Eleventh Amendment does not shield Defendants Koster of Nixon from this suit seeking declaratory and prospective relief

The key case cited by Defendants in support of Eleventh Amendment immunity arose in a different procedural setting. Defendants Nixon and Koster fit the exception to Eleventh Amendment immunity described in *Ex Parte Young*. Based on the allegations in

1

the second amended complaint, they are sufficiently connected with the enforcement of the statutes challenged in this case.

In assessing a motion to dismiss under Rule 12(b)(1) the factual allegations of the complaint are assumed to be true and construed in favor of the plaintiff. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). This presumption is particular to motions to dismiss. Defendants' reliance on *Reproductive Health Services of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139 (8th Cir. 2005), is misplaced. *Reproductive Health Services* addressed whether plaintiffs were entitled to a preliminary injunction against the Attorney General to enjoin enforcement of a law while a constitutional challenge was decided on the merits. Unlike the standard to survive a motion to dismiss, plaintiffs seeking a preliminary injunction must demonstrate a probability of success on the merits. The Eighth Circuit held that under the circumstances present in *Reproductive Health Services* the plaintiff had not shown evidence that the Attorney General was poised to take action or could do so independently even were he so inclined.[1]

Taking as true Plaintiff's allegations and all reasonable inferences in her favor, including the Attorney General and Governor's statutory authority and the Governor's public remarks, Plaintiff has stated sufficient claims against Defendants Nixon and Koster to survive their motion to dismiss.

Defendants also mistakenly rely on *Ex Parte Young*, 209 U.S. 123, 157 (1908), to support their assertion that the Eleventh Amendment bars a suit to enjoin enforcement of

---

[1] Defendants neglect to mention that in its opinion on the interlocutory appeal the Eighth Circuit directly referenced *Reproductive Health Systems* and nonetheless determined Plaintiff had satisfied the higher standard of being likely to succeed on the merits of several of her claims against the Governor and Attorney General. *Phelps-Roper v. Nixon*, 545 F.3d 685, fn.3 (8th Cir. 2008).

2

an unconstitutional statute against state officials in their official capacities. In doing so Defendants gloss over the important exception to that rule contained within *Ex Parte Young* itself. *Ex Parte Young* allows suits against a state official in cases that seek to enjoin enforcement of an unconstitutional law where a state official has "some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. at 157. State officials with some connection to the enforcement of the unconstitutional law may be sued to enjoin its enforcement. *See Reproductive Health Services*, 428 F.3d at 1145.

The Eighth Circuit has found that the Missouri Attorney General does have a connection with the enforcement of state statutes and, in doing so, rejected Eleventh Amendment immunity claims in cases, like this one, seek only prospective relief. "The [Missouri] Attorney General has statutory authority to represent the state in both criminal and civil cases." *Missouri Protection and Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (citing Mo. Rev. Stat. §§ 56.060.1, 27.030, 27.060). *Missouri Protection and Advocacy* recognized that because persons who would violate the challenged law could be criminally prosecuted, the Attorney General had a sufficient connection with the enforcement of the law. *Id.*

The Eighth Circuit has found that the Attorney General may be enjoined from enforcing a statute in the First Amendment context as well. In *Passions Video, Inc. v. Nixon*, 458 F.3d 837 (8th Cir. 2006), without addressing the Eleventh Amendment, reversed district court decisions granting the Attorney General summary judgment and denying the plaintiffs injunctive relief. *Passions Video*, 438 F.3d at 844.

There is no merit to the Attorney General and Governor's newly advanced claims in this case that they have no power to enforce the challenged statutes. The Attorney

3

General and the Governor, working together, can, under Missouri law, enforce state criminal statutes. At the direction of the governor, the attorney general "shall aid any prosecuting or circuit attorney in the discharge of their respective duties in the trial courts and in examinations before grand juries." Mo. Rev. Stat. § 27.030. There is nothing preventing the Governor and the Attorney General, working together, from undertaking prosecutions under any Missouri criminal statute.[2]

II.     Plaintiff's claims are ripe for adjudication

A.     § 578.503 is currently in effect

A Missouri statute takes effect "ninety days after the adjournment of the session at which it is enacted," Mo. Rev. Stat. § 1.130 (2008), unless it meets one of three exceptions. The exceptions are: (a) in a legislatively determine emergency a law may have an earlier effective date, (b) a law might expressively go into effect 90 days after the beginning of a recess of 30 or more days, and (c) the General Assembly might provide specific date, beyond the 90-day presumption, on which the law goes into effect.

Section 578.503 was enacted as House Bill 1026 in the Second Regular Session of the Ninety-Third General Assembly. MO LEGIS H.B. 1026 (2006). The bill included emergency provision such that § 578.501 was effective immediately. *Id.* The legislature purported to make § 578.502 effective only upon the occurrence of future events. *Id.* The law is silent as to the effective date of § 578.503, and more than three years have passed since the General Assembly adjourned. Accordingly, § 578.503 took effect 90 days after the legislature adjourned, remains in effect, and is ripe for adjudication.

---

[2] The fact that both the Governor and Attorney General are defendants in this case further distinguishes it from *Reproductive Health Services*, in which the Governor was not named.

B.  The constitutionality of § 578.502 is ripe for adjudication because Plaintiff will be significantly harmed by a failure to rule on the statute's validity and the issue is fit for judicial decision.

"The ripeness inquiry requires examination of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) (internal quotations omitted).

The fitness for judicial decision prong takes the context of the controversy into account. The purpose of the test is to "[safeguard] against judicial review of hypothetical or speculative disagreements." *Id.* at 1038 (citing *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979); *State of Mo. ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1337 (8th Cir. 1997)). Cases that might not meet that formulation of the requirement on its face are still ripe, however, "where an issue is largely legal in nature, may be resolved without further factual development, or where judicial resolution will largely settle the parties' dispute." *Id.* In *Nebraska Public Power District*, where the parties' dispute was dependent on a "triggering event" that "remain[ed] in the future," the Court found the requirement satisfied because the question presented was "purely legal," "all facts necessary to the resolution of this case [had] already been established," and judicial resolution of the issue would "largely settle the parties' dispute." *Id.* at 1039. Cases may be found fit for judicial decision even if the harm or controversy at issue is not concrete or immediate.

To satisfy the hardship prong, "an issue must be such that delayed review will result in significant harm," where "[h]arm includes both the traditional concept of actual

5

damages-pecuniary or otherwise-and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Id*. at 1038. In *Nebraska Public Power District*, the Eighth Circuit pointed to "[t]he insecurity caused by [the parties'] contending interpretations of the" agreement at issue, and held that "[w]here the uncertainty resulting from such a situation creates a sufficiently substantial financial risk, or will force parties to modify their behavior significantly, an issue may be ripe." Id. at 1039 (citing *Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n.*, 461 U.S. 190, 200-203 (2000)). Uncertainty as to the legality of a course of action is therefore a cognizable harm with regard to the ripeness of a case. The harm is at least as significant in this case because the statute restrict political speech in public *fora*. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality). Plaintiff would face significant hardship in the form of uncertainty about the legality of her protests and pickets if this Court declined to consider whether § 578.502 is constitutional. Indeed, Plaintiff has alleged that she has already been threatened with enforcement of the statute by local prosecutors. *Second Amended Complaint (Doc. # 106)* at ¶ 31(I).

The constitutionality of § 578.502 is fit for judicial decision because ruling on it will require no factual inquiry beyond that required for a ruling on § 578.501. The question is one of law and, to the extent facts are important, the facts are pertinent facts are common to Plaintiff's claims against each of the challenged statutes. Sections 578.501 and 578.502 are essentially the same. Subsections 1 and 3 of each provision are identical. Mo. Rev. Stat. §§ 578.501, § 578.502. Subsection 2 of § 578.501 states

> It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation

6

> occurs shall constitute a separate offense. Violation of this section is a
> class B misdemeanor, unless committed by a person who has previously
> pled guilty to or been found guilty of a violation of this section, in which
> case the violation is a class A misdemeanor.

Mo. Rev. Stat. § 578.501(2). The only difference in subsection 2 of § 578.502 is that "in front or about" is replaced with "within 300 feet." Mo. Rev. Stat. § 578.502(2). Because §§ 578.501 and 578.502 are so similar and because the protests and pickets in which Plaintiff wishes to engage could violate either statute, additional facts need not be developed to address both statutes.

   III.   Counts XII and XIII of the second amended complaint state a claim

   A.    Count XII

Plaintiff states a claim that Mo. Rev. Stat. § 578.503 is unlawful pursuant to Mo. Rev. Stat. § 1.130. Plaintiff is not aware of any previous or other Missouri law that causes the enactment of a statute to be contingent on the determination that another statute is unconstitutional; Defendants have cited none.

Geneaerally, "[a] law passed by the general assembly takes effect ninety days after the adjournment of the session at which it is enacted," subject to codified exceptions. Mo. Rev. Stat. § 1.130. There is no provision that permits a statute to be (possibly) enacted on an unspecified date in the future based on the happening of events under the control of other branches of government. Under the familiar concept that *expressio unius est exclusio alterius*, § 1.130 would include such provisions if they were permitted. Section 1.130 does not permit the legislature to make enactment a law contingent on future events.

7

On its face § 1.130 requires a law to specify an effective date if it will take effect at some other time than ninety days after the end of the session in which it was passed. "In the absence of guiding case or other authority, the language of the statute itself provides the best guide." *State v. McLaughlin*, 265 S.W.3d 257, 267 (Mo. 2008). The plain meaning of § 1.130 is that the legislature may "provid[e] that the law takes effect *on a date* in the future subsequent to the expiration of the period of ninety days herein mentioned." § 1.130(2) (emphasis added). The phrase "on a date in the future" requires a specific date, because it uses the singular article "a."

B.  Count XIII

Separation of powers is a fundamental and important constitutional principle. Separation of powers "diffuses power the better to secure liberty," *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952). The Missouri Supreme Court describes itself as having

> the duty and obligation to protect the right of the legislative department, as we would also the executive branch, to exercise those powers specifically delegated to it in the same manner we would a similar challenge to the powers of the judiciary. Refusal to do as much would constitute an encroachment upon the legislature by this court and do violence to that separation of powers so fundamentally vital to our form of government.

*State ex rel. Danforth v. Banks*, 454 S.W.2d 498, 500 (Mo. 1970). Courts must carefully consider whether laws made contingent on future occurrences are an unconstitutional delegation of legislative authority.

The Missouri Constitution explicitly provides for the separation of powers:

> The powers of government shall be divided into three distinct departments--the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of

8

> persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Mo. Const. art. II, § 1. Additionally, "[t]he legislative power shall be vested in a senate and house of representatives to be styled 'The General Assembly of the State of Missouri,'" *Id.* art. III, § 1, and "[b]riefly, legislative power is the power to make laws," *Merchants' Exch. of St. Louis v. Knott*, 11 S.W. 565, 571 (Mo. 1908). The power to make laws cannot be delegated to anyone but the General Assembly.

A law can only be *enacted* by the General Assembly. Past cases that that have held that particular contingent laws do not violate the separation of powers are distinguishable because the laws merely created an effective date in the future, not a future date when a law would be enacted as § 573.503 attempts. The laws at issue in those cases relied on the occurrence of some event merely to become effective, not to become laws.

According to the terms of § 573.503, § 573.502 has not yet been enacted. "The enactment of section 578.502 shall become effective only on the date the provisions of section 578.501 are finally declared void or unconstitutional by a court of competent jurisdiction and upon notification by the attorney general to the revisor of statutes." Mo. Rev. Stat. § 578.503. This is a very different proposition that has been addressed in previous cases. For example, in *State ex rel. Dome v.Wilcox*, 45 Mo. 458 (Mo. 1870), the court noted "[t]he future event – the happening of the contingency or the fulfillment of a condition – afford[ed] no additional efficacy to the law, but simply furnish[ed] the occasion for the free exercise of the power." *Wilcox*, 45 Mo. at 464.

9

Under the terms of § 578.503, a court and the Attorney General will determine when and if § 578.502 is enacted. Allowing such power to the judicial and executive branches violates the separation of powers provisions of the Missouri Constitution.

  IV.  *Pullman* deferral is not appropriate grounds for a motion to dismiss

*Pullman* deferral is not a ground for a federal court to <u>dismiss</u> a claim. In *Pullman*, direct the district court to "retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion." *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 501-02 (1941). The Supreme Court, indeed, has "on several occasions explicitly recognized that abstention does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 416 (1964) (internal quotation omitted). Dismissal would constitute such an abdication of federal jurisdiction.

When a federal court believes that a particular question is best left to a state court to answer, "[t]he proper course is for the District Court to retain jurisdiction pending the proceedings in the state courts." *Am. Trial Lawyers Ass'n, N.J. Branch v. N.J. Sup. Ct.*, 409 U.S. 467, 469 (1973) (internal citations omitted). This allows the court to "accor[d] appropriate deference to the respective competence of the state and federal court systems," while maintaining the "primacy of the federal judiciary in deciding questions of federal law." *England*, 375 U.S. at 415-16 (internal quotations omitted). Whether this Court should defer ruling on certain counts is not a question of whether there is jurisdiction or whether Plaintiff has stated a claim, so is not properly raised in a motion to dismiss.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT
ACLU of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112
tony@aclu-em.org


BENICIA BAKER-LIVORSI
6 Westbury Drive
St. Charles, Missouri 63301
(636) 947-8181


ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to the following electronic filing participants:

Michael G. Berry
304 East High Street, Suite 100
P.O. Box 1606
Jefferson City, Missouri 65102
Attorney for Defendants Goodwin, Hemphill, Wrinkle, and Laclede County

Jeremiah J. Morgan
Assistant Attorneys General
P.O. Box 899
Jefferson City, Missouri 65102
Attorneys for Defendants Nixon, Keathley, and Koster

Ransom A Ellis, III
901 St. Louis Street, Suite 600
Springfield, MO 65806-2505
Attorney for Defendant Blackburn

/s/ Anthony E. Rothert