IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SHIRLEY L. PHELPS-ROPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:06-cv-04156-FJG |
| v. ) | |
| ) | |
| CHRIS KOSTER, et. al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff asserts that three Missouri statutes enacted in 2006 violate the federal Constitution and Missouri law. In accordance with the Fifth Amended Scheduling and Trial Order, she submits the following:

I.  Statement of the Case

On July 21, 2006, Shirley L. Phelps-Roper (hereinafter "Plaintiff") filed this action challenging the constitutionality of Missouri statutes related to protests and pickets near funerals or memorial services, processions, and related activities. This case involves three Missouri statutes enacted in 2006 in response to pickets conducted by Plaintiff and other members of her church: R.S.Mo. §§ 578.501, 578.502, and 578.503. The text of the statutes is as follows:

578.501. Funeral protests prohibited, when--citation of law--definitions

1. This section shall be known as "Spc. Edward Lee Myers' Law".

2. It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.

1

3. For the purposes of this section, **"funeral"** means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead.

R.S.Mo. § 578.501 (emphasis in original);

578.502. Funeral protests prohibited, when--funeral defined

1. This section shall be known as "Spc. Edward Lee Myers' Law".

2. It shall be unlawful for any person to engage in picketing or other protest activities within three hundred feet of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.

3. For purposes of this section, **"funeral"** means the ceremonies, processions, and memorial services held in connection with the burial or cremation of the dead.

R.S.Mo. § 578.502 (emphasis in original); and

578.503. Contingent effective date

The enactment of section 578.502 shall become effective only on the date the provisions of section 578.501 are finally declared void or unconstitutional by a court of competent jurisdiction and upon notification by the attorney general to the revisor of statutes.

R.S.Mo. § 578.503.

II. Plaintiff's Substantive Claims

Plaintiff's Second Amended Complaint consisted of fourteen counts. She has dismissed counts V, VI, and IX pursuant to FED.R.CIV.R. 41(a)(2). She has also voluntarily dismissed her claims against Raymond Blackburn. The following claims remain:

A. Count I

In Count I, Plaintiff asserts that § 578.501 violates the First Amendment. She claims that § 578.501 is a content-and-viewpoint discriminatory restriction on speech that does not further

2

Case 2:06-cv-04156-FJG   Document 234   Filed 05/17/10   Page 2 of 12

any compelling governmental interest. In addition she asserts that § 578.501 is invalid as a time, place, and manner restriction because it is not narrowly tailored toward furtherance of a significant government interest and it fails to leave open ample alternative channels for communication of the message she attempts to conveys by picketing near funerals. She also argues that § 578.501 is unconstitutionally overbroad and vague.

1. Forum Analysis

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Ed. Assn. v. Perry Local Ed. Assn.*, 460 U.S. 37, 44 (1983). To determine the correct standard, the Supreme Court uses a forum analysis for evaluating restrictions of speech on government property. *See id.* at 45-6. Forum analysis begins with a determination whether a property is a traditional public forum, a designated public forum, or a nonpublic forum. *Families Achieving Independence & Respect v. Neb. Dep't of Soc. Servs.,* 111 F.3d 1408, 1418 (8th Cir.1997).

"'[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *Bowman*, 444 F.3d at 975 (*quoting United States v. Grace,* 461 U.S. 171, 177 (1983)). Section 578.501 restricts speech on sidewalks and streets and in parks. These are "quintessential examples" of the traditional public *fora*. *Perry Ed. Assn.*, 460 U.S. at 45. "[S]treets and parks … 'have immemorially been held in trust for the use of the public and [. . .] have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496 (1939)). Accordingly, this case involves a traditional public forum.

3

### 2. Content and Viewpoint Discrimination

"Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 898 (2010) (*citing United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000)). The government cannot regulate speech because it disagrees with the message conveyed. *See Ward v. Rock Against Racism*, 491 U.S. at 791. Where it does so, the regulation is presumptively unconstitutional. *See R.A.V. v City of St. Paul*, *Minn.*, 505 U.S. 377, 382 (1992). "The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it." *United States v. Stevens*, 2010 WL 1540082, *6 (U.S.). For such a regulation to be upheld, it must be necessary to serve a compelling government interest and narrowly tailored to achieve its end. *See Perry Educ. Ass'n*, 460 U.S. at 45. "The principal inquiry in determining content neutrality … is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

### 3. Time, Place, and Manner Restrictions

Even if § 578.501 is content- and-viewpoint-neutral, it nonetheless can only validly infringe upon speech in traditionally public *fora* to the extent that the statute: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. at 791. The failure to meet any one of the criteria is decisive and renders the statute unconstitutional. Section 578.501 satisfies none of the *Ward* criteria. Plaintiff asserts that the statute meets none of the criteria.

4

Defendants appear to argue that there is a government interest in protecting the dignity and sanctity of funerals by barring outrageous speech. The Supreme Court has rejected any effort to justify the criminalization of speech on such subjective standards. Addressing speech restrictions near embassies intended to protect the dignity of foreign diplomats, the Court noted,

> As a general matter, we have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate 'breathing space' to the freedoms protected by the First Amendment." *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988). See also, *e.g., New York Times Co. v. Sullivan,* 376 U.S., at 270, 84 S.Ct., at 720. A "dignity" standard, like the "outrageousness" standard that we rejected in *Hustler,* is so inherently subjective that it would be inconsistent with "our longstanding refusal to [punish speech] because the speech in question may have an adverse emotional impact on the audience." *Hustler Magazine, supra,* 485 U.S., at 55, 108 S.Ct., at 882.

*Boos v. Barry*, 485 U.S. 312, 322 (1988).

Were there such a significant government interest, § 578.501 is not narrowly tailored toward achieving it. The statute criminally proscribes speech on public streets and sidewalks without regard to whether the speech is disruptive, unwanted, or targeting the funeral. The restriction begins an hour before a funeral (or procession) and extends until an hour after the funeral (and procession). It is not limited to the space directly in front of a funeral, but bars pickets "in front of or about" any location a funeral (or procession is held). It is not limited to events on private property, but also includes funerals (or processions) in parks.

Plaintiff's message is particular to funerals. For this reason, § 578.501 fails to leave open ample alternative channels for her to convey her particular message to her intended audience.

    4.    Overbroad

Section 578.501 is overbroad. Restrictions that burden or suppress free speech must be narrowly drawn in order to avoid the chilling effect of regulations. "[T]he First Amendment

5

needs breathing space and … statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn[.]" *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973). The government may not suppress lawful speech as a means to prevent unlawful speech, and protected speech does not become unprotected merely because it resembles the latter. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

Section 578.501 is overbroad because it limits speech that is unquestionably protected by the constitution. If truly content and viewpoint neutral, the statute criminalizes speech of persons offering support or prayers to mourners. In addition, the buffer zone floats geographically and is not limited to fighting words, disruptive protests, or even to protests related in some way to a funeral, memorial service, or funeral procession.

        5.      Vagueness

The Supreme Court has recognized that a law can be impermissibly vague for either of two independent reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) if it authorizes or encourages arbitrary and discriminatory enforcement. *Chicago v. Morales,* 527 U.S. 41, 56-57 (1999). When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). The reason for this rule is that "First Amendment freedoms need breathing space to survive." *N.A.A.C.P. v. Button*, 371 U.S. 415, 432-33 (1963). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)(internal citation references omitted).

6

Section 578.501 is unconstitutionally vague. Plaintiff is a person of at least ordinary intelligence and thinks she understands what the statute proscribes. But she keeps encountering Missouri law enforcement officials who think the statute has different meanings. Several key terms of the statute are left undefined.

B.   Count II

In Count II of her Second Amended Complaint, Plaintiff challenges the constitutionality of R.S.Mo. § 578.502. The only difference between R.S.Mo. § 578.501 and § 578.502 is that rather than criminalizing speech in front of or about any location a funeral or procession is held, the latter prohibits speech within three hundred feet of any location where a funeral or procession is held.

Plaintiff asserts that § 578.502 is an unconstitutional restriction on speech for the same reasons as § 578.501. Defendants offer no justification or argument by which § 578.502 can be constitutional if § 578.501 is not.

C.   Count III

In Count II, Plaintiff asserts that § 578.501, in purpose and effect, prohibits her from engaging in practices that are integral to her exercise of religion.

Picketing funerals is an integral part of how Plaintiff exercises her religion. It is a central tenant of her faith that she must make the connection between sinful behavior and death known through the performance of pickets. By having the exercise of her religion subject her to arrest, prosecution, and the possibility of months in jail, the statutes place a substantial burden on Plaintiff's exercise of religion. She is required to choose between following the precepts of her religion and facing punishment under the challenged statutes or abandoning those precepts and avoiding punishment under the challenged statutes. "Governmental imposition of such a choice

7

puts the same kind of burden upon the free exercise of religion as would a fine imposed against [an individual] for her Saturday worship." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

In purpose and effect, the statute is not neutral or generally applicable. It does not foreclose all speech or religious activity near funerals, only pickets and protests. If, however, the statute is content neutral and generally applicable, then it place an enormous burden on free exercise rights. Prayer is included among the activities that can constitute picketing. *Veneklase v. City of Fargo*, 248 F.3d at 743. If content neutral and generally applicable, then § 578.501 criminalizes prayer near funerals. A law that makes it a crime to pray near and during a funeral or memorial service is a substantial burden of the right of free exercise.

D.  Count IV

In Count II of her Second Amended Complaint, Plaintiff challenges the constitutionality of R.S.Mo. § 578.502. The only difference between R.S.Mo. § 578.501 and § 578.502 is that rather than criminalizing speech in front of or about any location a funeral or procession is held, the latter prohibits speech within three hundred feet of any location where a funeral or procession is held.

Plaintiff asserts that § 578.502 is an unconstitutional restriction on the free exercise of religion for the same reasons as § 578.501. Defendants offer no justification or argument by which § 578.502 can be constitutional if § 578.501 is not.

E.  Counts VII, VIII, X, and XI

In Counts VII, VIII, X, and XI, Plaintiff asserts the challenged statutes were unconstitutional as-applied to her on two specific instances. Plaintiff and the Defendants against whom she makes as-applied claims have reached a settlement amongst themselves and await this

8

Court's grant of their motions for entry of consent judgments. In the alternative, there are no disputed facts with regard to the as-applied claims, so they are not appropriate for trial.

F.   Count XII

In Count XII of her Second Amended Complaint, Plaintiff asserts that R.S.Mo. §§ 578.502 and 578.503 violate R.S.Mo. § 1.130 by making the "enactment" of § 578.502 contingent on future events outside action of the legislature. The parties agree that there are no disputed facts material to Count XII and that it should be resolved as a question of law.

G.   Count XIII

In Count XIII of her Second Amended Complaint, Plaintiff submits that R.S.Mo. §§ 578.502 and 578.503 violate Mo. Const. Art. 2, § 1—the separation of powers provision—by making the "enactment" of the statute contingent on actions of the judicial and executive branches. The parties agree that there are no disputed facts material to Count XIII and that it should be resolved as a question of law.

H.   Count XIV

In Count XIV of her Second Amended Complaint, Plaintiff argues that R.S.Mo. §§ 578.502 and 578.503 are unconstitutionally vague. Because of the vagueness of § 578.503, people of ordinary intelligence do not understand if § 578.502 is in effect and will not be able to do so in the future. Given the First Amendment freedoms at stake, vagueness analysis is strict. *Hoffman Estates*, 455 U.S. at 499. Section 578.503 is too vague to provide requisite notice of when or if § 578.502 will be in effect. The parties agree that there are no disputed facts material to Count XIV and that it should be resolved as a question of law.

### III. State Defendants' Substantive Claim

Defendants offer two substantive claims to avert entry of judgment against them. The Attorney General and the Governor assert they have Eleventh Amendment immunity. All three state Defendants claim Plaintiff's speech is "fighting words." Plaintiff disputes both claims.

#### A. Immunity

The Attorney General and the Governor are proper defendants in this case under the reasoning of *Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006). To the extent they have Eleventh Amendment immunity, they have waived it. *Union Elec. Co. v. Mo. Dept. of Conservation*, 366 F.3d 655, 660 (8th Cir. 2004); *United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir. 2009); *Hankins v. Finnel*, 964 F.2d 853, 856-58 (8th Cir. 1992).

#### B. "Fighting Words"

Sections 578.501 and 578.502 are not limited to "fighting words" and Plaintiff's speech does not constitute "fighting words." Accordingly, the statutes cannot be sustained on the grounds that they merely limit fighting words.

### IV. Burden of Proof

Because the challenged statutes restrict speech, Defendants bear the burden of proving their actions pass constitutional muster. *Perry Ed. Assn. v. Perry Local Ed. Assn.*, 460 U.S. 37, 45-6 (1983). "First Amendment standards … 'must give the benefit of any doubt to protecting rather than stifling speech'" *Citizens United v. Federal Election Com'n*, 130 S.Ct. 876, 891 (2010)(*quoting Federal Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007)(opinion of Roberts, C.J.).

The speech and assembly regulations imposed by the challenged statutes are prior restraints on speech. A prior restraint on speech carries with it "a heavy presumption of unconstitutionality." *Bowman v. White*, 444 F.3d at 980 (*citing Forsythe County v. The Nationalist Movement*, 505 U.S. 123, 130 (1992). Although prior restraints on speech are not unconstitutional per se, courts have found there are few exceptions. *Stamy v. Packer*, 138 F.R.D. 412, 417 (D.N.J. 1990).

V. Disputes of Material Fact

Plaintiff asserted there are no *material* facts in dispute.

VI. Evidentiary Issues

Plaintiff has raised the evidentiary issues she anticipates in motions in limine filed herewith.

Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT
ACLU of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114
FAX: (314) 652-3112
tony@aclu-em.org

BENICIA BAKER-LIVORSI
6 Westbury Drive
St. Charles, Missouri 63301
(636) 947-8181

ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to the following electronic filing participants:

Michael G. Berry
304 East High Street, Suite 100
P.O. Box 1606
Jefferson City, Missouri 65102
Attorney for Defendants Goodwin, Hemphill, Wrinkle, and Laclede County

Jeremiah J. Morgan
Assistant Solicitor General
P.O. Box 899
Jefferson City, Missouri 65102
Attorneys for Defendants Nixon, Keathley, and Koster

Ransom A. Ellis, III
901 St. Louis Street, Suite 600
Springfield, MO 65806-2505
Attorney for Defendant Blackburn

                                                  /s/ Anthony E. Rothert

12

Case 2:06-cv-04156-FJG   Document 234   Filed 05/17/10   Page 12 of 12