# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

SHIRLEY PHELPS-ROPER, )
    Plaintiff, )
)
v. ) No. 06-4156-CV-C-FJG
)
CHRIS KOSTER, et al., )
    Defendants. )

# ORDER

Pending before the Court are (1) Plaintiff's Motion for Summary Judgment (Doc. No. 183); (2) Defendants Koster, Nixon and Replogle's Motion for Partial Summary Judgment (Doc. No. 185); and (3) Defendants' Motion for Leave to File Amended Answer (Doc. No. 265). All will be considered below.

## I. Background

Plaintiff's action is a Section 1983 claim, seeking equitable relief. The counts pending against Defendants Koster, Nixon and Replogle are Counts I, II, III, IV, XII, XIII, and XIV. Count I seeks a declaration that Section 578.501 is unconstitutional under the free speech provisions of the First Amendment; Count II seeks a declaration that Section 578.502 is unconstitutional under the free speech provisions of the First Amendment; Count III seeks a declaration that Section 578.501 is unconstitutional under the Free Exercise Clause of the First Amendment; Count IV seeks a declaration that Section 578.502 is unconstitutional under the Free Exercise Clause of the First Amendment; Count XII seeks a declaration that Sections 578.502 and 578.503 violate Missouri statutory provisions as to the effective date of these statutes; Count XIII seeks a declaration that Sections 578.502 and 578.503 violate separation of powers provisions of the Missouri Constitution; and Count XIV seeks a declaration that Sections 578.502 and 578.503 are unconstitutionally vague while failing to provide due process under the Fourteenth Amendment.

Counts V and VI were dismissed without prejudice on January 28, 2010, and Count

IX was dismissed on April 15, 2010.  Counts VII, VIII, X, and XI challenge the application of the funeral protest statutes by local law enforcement officials named as defendants. Plaintiff and those defendants have moved for entries of consent judgments (see Doc. No. 27 (Defendant Goodwin), Doc. No. 129 (Defendants Laclede County, Wright, and Wrinkle), and Doc. No. 144 (Defendant Blackburn)).  This Court has deferred entering the consent judgments until the remainder of the case is resolved.

Plaintiff seeks summary judgment as to all remaining counts in her Complaint. Defendants Nixon, Koster, and Replogle seek partial summary judgment as to Counts XII, XIII and XIV (see Doc. No. 185).  On June 8, 2010, this Court held oral argument on Plaintiff's motion for summary judgment as to her free speech and free exercise of religion claims.

## II. Facts

This case involves three Missouri statutes enacted in 2006:  R.S.Mo. §§ 578.501, 578.502, and 578.503. In their current versions, the statutes read as follows:

578.501. Funeral protests prohibited, when--citation of law--definitions

1. This section shall be known as "Spc. Edward Lee Myers' Law".

2. It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.

3. For the purposes of this section, **"funeral"** means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead.

R.S.Mo. § 578.501 (emphasis in original).

578.502. Funeral protests prohibited, when--funeral defined

2

1. This section shall be known as "Spc. Edward Lee Myers' Law".

2. It shall be unlawful for any person to engage in picketing or other protest activities within three hundred feet of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.

3. For purposes of this section, **"funeral"** means the ceremonies, processions, and memorial services held in connection with the burial or cremation of the dead.

R.S.Mo. § 578.502 (emphasis in original).

578.503. Contingent effective date

The enactment of section 578.502 shall become effective only on the date the provisions of section 578.501 are finally declared void or unconstitutional by a court of competent jurisdiction and upon notification by the attorney general to the revisor of statutes.

R.S.Mo. § 578.503.

Plaintiff is a member of Westboro Baptist Church (hereinafter "WBC"). Plaintiff and other church members believe that Americans have disregarded the commandments of God by engaging in sin and that God is thus exercising his wrath by killing Americans. In particular, Plaintiff and other members of WBC perceive the homosexual movement as especially dangerous. Plaintiff and other members of the WBC express their religious beliefs by engaging in picketing and protesting. Since approximately 1993, Plaintiff and other members of WBC have picketed and protested near funerals of gay persons, persons who died from AIDS, persons whose lifestyles they believed to be sinful but are touted as heroic upon their death, and persons whose actions while alive had supported homosexuality. Plaintiff believes that the public platform of funerals is the only place where her religious message can be delivered in a timely and relevant manner to a certain

audience. Plaintiff believes she is also compelled to warn society of God's wrath.

In 2005, Plaintiff and other members of WBC began picketing near the funerals of American soldiers. Plaintiff indicates that the pickets near funerals advance church members' message of God's hatred of America for its tolerance of homosexuality and other alleged evils. The signs carried by Plaintiff and other church members express messages such as "God Hates Fags," "Divorce Plus Remarriage Equals Adultery; God Hates Adultery," "God Hates the USA," "America is Doomed," "Thank God for Dead Soldiers," "God is America's Terror," "Priests Rape Boys," "Fags Doom Nations," and "9- 11: Gift From God." Plaintiff indicates that picketing funerals is integral because it "connect[s] that dot from the disobedience and rebellion to the outcome, the consequence of it[.]" Doc. No. 184, Ex. 1, ¶ 7.

Plaintiff indicates that all of her pickets and protests are peaceful and conducted on public streets and sidewalks. Plaintiff testifies she has no desire to disrupt any funeral proceeding or to interfere with ingress to or regress from any location where a funeral is held. She indicates her pickets and protests end when a funeral begins. Plaintiff and other church members have engaged in more than 42,675 pickets, including more than 530 pickets associated with funerals. Plaintiff asserts that aside from an incident in Topeka in 1993 where eight picketers were assaulted and taken to the hospital and isolated minor incidents since, the protests have not provoked immediate violent reactions.[1]

Prior to February 23, 2006, the State of Missouri did not have any statute addressing protests or pickets near funerals or memorial services. On August 5, 2005, Plaintiff and

---

[1] In their opposition to Plaintiff's motion for summary judgment, Defendants note other incidents, including a Jefferson City police officer having to tell a motorist to get back in his car and keep going, an incident where a person on a bicycle slashed the tire of a church member's car, and an incident in Canada where there were no laws protecting the protestors. Frankly, Defendants' opposition is immaterial, given the numerous pickets conducted by Plaintiff over the years. In particular, the citation to an incident in Canada, which does not have the same free speech protections as the United States, has no bearing on the Court's decision in this matter.

4

other church members held a picket near the funeral of Spc. Edward Lee Myers in St. Joseph, Missouri. Thereafter, Missouri Senate Majority Leader Charlie Shields introduced the bill that created the original R.S.Mo. § 578.501. On February 23, 2006, the Secretary of the Senate and the Speaker of the House signed the bill and sent it to the Governor for signing. The same day, acting governor Senator Michael Gibbons signed the bill with then-Governor Matt Blunt's consent.[2]

On May 9, 2006, the Senate adopted a Senate Substitute which repealed R.S.Mo. § 578.501, as enacted on February 23, 2006, and replaced it with the current R.S.Mo. §§ 578.501, 578.502, and 578.503. *Truly Agreed to and Finally Passed Senate Substitute for Senate Committee Substitute for House Committee Substitute for H.B. 1026* (Ex. 14 to Doc. No. 184) at 3-4. On May 12, 2006, the Senate Substitute was truly agreed to and finally passed by the House. It was signed by Governor Blunt on July 5, 2006. On July 5, 2006, Governor Blunt issued an executive message regarding his signing of House Bill 1026. Missouri Governor's Message (July 5, 2006); Ex. 15 to Doc. No. 184. He described the new law as "enacting additional restrictions on protests at funerals." Id. According to the Governor's message, "The law expands existing protections for mourners to those funerals held somewhere other than church, cemeteries[,] or funeral homes. For example funerals and services held in local schools or parks would also protected [sic] by the new law." Id.

Plaintiff indicates that, in an attempt to abide by the law, she has contacted local law enforcement officials in advance of planned pickets and protests to determine where she may picket without being in violation of R.S.Mo. § 578.501. By way of example, Plaintiff cites in her statement of facts the varying interpretations of Sections 578.501 and 578.502 by officials in McDonald County, Clay County, Greene County, Carroll County, St. Francois

---

[2]The original bill prohibited picketing or other protest activities in front of or about any "church, cemetery, or funeral establishment, as defined by section 333.011, RSMo." See R.S.Mo. § 578.501, legislative history. The current statute applies to any location at which a funeral is held.

5

County, Cape Girardeau County, New Madrid County, Monroe County, Washington County, and Laclede County. See Doc. No. 184, ¶¶ 35-89. Plaintiff's responses from these various government officials indicate a wide variety of interpretations of the statutes, including assertions that Section 578.502 would be enforced (when, to-date, that statute is not in effect).

Plaintiff indicates that despite her efforts, in the vast majority of cases she is unable to obtain in advance reliable information about what route a procession associated with a funeral will take. Plaintiff further notes that in certain instances, Section 578.501 has only been applied against the WBC and not counter-protestors. For example, on July 9, 2006, when church members protested in Kirksville, Missouri, they were required to remain at least five hundred feet away from the public middle school building where the funeral occurred. At the same time, a large number of counter-protestors and other community members with signs and flags were permitted to be directly in front of the middle school building.

On January 24, 2009, this Court entered a preliminary injunction prohibiting Defendants from enforcing R.S.Mo. § 578.501. (Doc. No. 74). An amended order containing the same injunction was entered on January 30, 2009. (Doc. No. 75). Since entry of the preliminary injunction, no law enforcement official in Missouri has attempted or threatened to enforce R.S.Mo. § 578.501 or R.S.Mo. § 578.502 against Plaintiff or other church members. Plaintiff indicates that through the end of January 2010, she and/or the WBC have held approximately thirty-three pickets in Missouri since entry of the preliminary injunction without incident.

### III. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c);

6

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**IV.     Plaintiff's Motion for Summary Judgment (Doc. No. 183)**

Plaintiff moves for summary judgment as to Counts I, II, III, IV, VII, VIII, X, XI, XII, XIII, and XIV of her Second Amended Complaint. Before the Court reaches the merits of Plaintiff's constitutional claims, the Court will first consider certain of Defendants' defenses.

7

### A. Defenses

#### 1. Eleventh Amendment Immunity

Defendants Koster and Nixon previously challenged whether they were proper parties on the basis of Eleventh Amendment immunity (see Motion to Dismiss, Doc. No. 110 and Order denying same, Doc. No. 141). Besides finding that Plaintiff had pled enough facts on the face of her complaint indicating that these state officers had some connection with the enforcement of the act, the Court noted (without deciding at that time) that Eleventh Amendment immunity may be waived by the conduct of the parties in litigation. See Hankins v. Finnel, 964 F.2d 853, 856-68 (8th Cir. 1992).

After considering the arguments raised by the parties in their summary judgment briefing, the Court finds that Defendants Koster and Nixon have waived any Eleventh Amendment immunity. As noted by Plaintiff in her reply suggestions, the governor and attorney general filed their original answer on September 21, 2006, without raising Eleventh Amendment immunity as an affirmative defense. (Doc. No. 20). The defense can be waived in litigation. United States v. Metro. St. Louis Sewer Dist., 578 F.3d 722, 725 (8th Cir. 2009). One way in which the defense can be waived is by failing to assert the defense in a timely manner. See Metro. St. Louis Sewer Dist., 578 F.3d at 725. As Plaintiff notes, Missouri's Attorney General and Governor participated in this litigation for three years, in both this Court and in the Eighth Circuit, without raising the defense. The Court agrees with Plaintiff that under the circumstances, Defendants Koster and Nixon have waived any Eleventh Amendment immunity by their conduct.

#### 2. Fighting Words

Defendants indicate in their response brief that Plaintiff's speech is not entitled to constitutional protection at all, because it constitutes "fighting words." Fighting words are "words that, under the circumstances, are likely to incite an immediate violent reaction when addressed to an ordinary citizen[.]" Chaplinsky v. New Hampshire, 315 U.S. 568, 569-72 (1942); see also Lewis v. City of New Orleans, 415 U.S. 130, 135 (1974) (Powell,

8

J, concurring) (same). Such words are not entitled to First Amendment protection because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky, 315 U.S. at 569-72.

Defendants state that the record shows (1) Plaintiff's protests are likely to incite an immediate violent reaction; and (2) Plaintiff's protests do not play an essential part of any exposition of ideas. Plaintiff admits she uses the following signs at protests: "God Hates Fags," "Divorce Plus Remarriage Equals Adultery; God Hates Adultery," "God Hates the USA," "America is Doomed," "Thank God for Dead Soldiers," "God is America's Terror," "Priests Rape Boys," and "Fags Doom Nations." Defendants indicate that these words are likely to provoke an immediate reaction due to the emotional volatility accompanying a death/funeral situation, citing to their Exhibit C, describing a family member's outrage at the funeral of Spc. Edward Lee Myers, and Plaintiff's deposition testimony describing a few assaults against the WBC that have taken place over the years. Defendants also indicate that these types of provoking signs are "sound bites" designed to provoke, and Plaintiff's signs play no essential part in the exposition of ideas.

After considering Defendants' argument, the Court finds that Defendants have not demonstrated that Plaintiff's speech is not entitled to constitutional protection. For instance, the Court cannot find that all the signs listed above constitute "fighting words." By way of example, the Court does not believe the statement "Divorce Plus Remarriage Equals Adultery; God Hates Adultery" to be the sort of sentiment that would inspire imminent violence, nor can the Court find that this statement plays no essential part in the exposition of ideas. Further, as noted in Plaintiff's reply brief, Sections 578.501 and 578.502 are not limited to "fighting words," as the statutes have no requirement that speech must be likely to incite imminent violence. Compare, e.g., Md. Code Ann., Criminal Law, § 10-205(b) ("A person may not address speech to a person attending a funeral, burial, memorial service, or funeral procession that is likely to incite or produce an imminent breach of the peace");

9

Va. Code Ann. § 18.2-415 (prohibiting disruptions that interfere with the orderly conduct of the funeral, memorial service, or meeting, or speech activity that "has a direct tendency to cause acts of violence by the person or persons at whom, individually, the disruption is directed").

Although Plaintiff's speech may be repugnant to listeners, the Court finds that, at a minimum, some of Plaintiff's speech is entitled to constitutional protection sufficient for Plaintiff to maintain her constitutional claims.[3]

### 3. Preemption; Defendants' Motion for Leave to File Amended Answer (Doc. No. 265)

At oral argument, Defendants' counsel suggested for the first time that Missouri's funeral protest statutes are preempted in whole or in part by a federal statute, 18 U.S.C. § 1388.[4] Defendants Koster, Nixon and Replogle subsequently sought to amend their answer to assert preemption as an affirmative defense. See Doc. No. 265. As noted by Plaintiff in her opposition to Defendants' motion for leave to amend their answer, this proposed amendment comes far beyond the time allowed in the Court's Scheduling and Trial Order (Doc. No. 114, which established April 13, 2009, as the deadline for motions to amend pleadings). Further, the Court agrees with Plaintiff that assertion of this purported

---

[3]Defendants also argue that because Plaintiff has "conceded" that Missouri's funeral protest law is "crystal clear," Plaintiff's constitutional claims simply cannot prevail. See Defendants' Suggestions in Opposition, citing Plaintiff's deposition at pp. 124:2; 125:22; 126:10-15; 127:17 – 128:15. However, Defendants' argument is not fully supported by the record. Plaintiff testified, "While it seems crystal clear to me [what the statute means in light of Supreme Court precedent], it has become a murky cesspool of confusion." Phelps-Roper Depo, Doc. No. 219, Ex. 23, p. 124. She further indicated that others do not agree with her about the meaning of the statutes. Id. at 204-05. She further indicates that her contacts with law enforcement throughout the state lack any consistent understanding of the statutes' meaning. Again, the Court finds that Plaintiff's claims about the constitutionality of the statutes should be heard.

[4]Notably, 18 U.S.C. § 1388 applies only to the funerals of members or former members of the armed forces. Missouri's statutes are not so narrowly drawn, and apply to all funerals.

10

affirmative defense is futile, as (1) the challenged statutes are not preempted, as discussed at pages 6-7 of Doc. No. 266; and (2) even if the challenged statutes were preempted by federal law, that would be an alternative basis for this Court to find the statutes to be invalid, not a defense to Plaintiff's claims. In short, even if the Court were inclined to grant Defendants an extension of time in which to make this argument, Defendants' argument that the challenged statutes are preempted by federal law is futile. Defendants' motion for leave to file amended answer (Doc. No. 265) will therefore be **DENIED.**

The Court will now turn to the merits of Plaintiff's constitutional challenges.

### B. Count I–Does R.S.Mo. § 578.501 violate Plaintiff's right to free speech under the First and Fourteenth Amendments?

In Count I of her Second Amended Complaint, Plaintiff asserts that R.S.Mo. § 578.501 violates her right to free speech under the First and Fourteenth Amendments of the United States Constitution. The First Amendment states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I.

As an initial matter, when examining the constitutionality of this statute, the Court must determine whether the restriction on speech is content-based or content-neutral in order to determine the proper standard of review. Where the speech restriction is content-based, it is subject to strict scrutiny and can be upheld only when necessary to serve a compelling state interest and is narrowly drawn to achieve that end. Turner Broadcasting System, Inc. v. Federal Communications Commission, 512 U.S. 622, 642, 653 (1994). On the other hand, where the restriction is content-neutral, it is subject to intermediate scrutiny and survives if it is narrowly tailored to serve a significant government interest and leaves open ample alternative channels for communication. Turner, 512 U.S. at 642; Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Upon its initial review at the preliminary injunction stage, this Court found that the statutes at issue were content-neutral. See Doc. No. 47. That finding was upheld by the Eighth Circuit. See Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008) (explaining,

11

"[t]he plain meaning of the text controls, and the legislature's specific motivation for passing a law is not relevant, so long as the provision is neutral on its face." Id., citing City of L.A. v. Alameda Books, Inc., 535 U.S. 425, 448 (2002); Hill v. Colorado, 530 U.S. 703, 724-25 (2000)). After reviewing the parties' arguments and authorities, this Court remains convinced that the statutes at issue in this matter are content-neutral, as discussed in its previous Order. See Doc. No. 47. The Court will therefore analyze these statutes using intermediate scrutiny.

Under intermediate scrutiny, the statute can only infringe upon speech in traditionally public *fora* to the extent that the statute: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication. Ward v. Rock Against Racism, 491 U.S. at 791. The failure to meet any one of the criteria renders the statute unconstitutional. Additionally, the burden is on the government to show that there is evidence supporting its proffered justification, including objective evidence showing that the restrictions serve the interests asserted. See Horina v. City of Granite City, Ill., 538 F.3d 624, 633 (7th Cir. 2008).

### 1. Significant Government Interest

In this Court's Order denying preliminary injunction (Doc. No. 47), the Court found that the state had a significant interest in preserving and protecting the dignity of funeral services, as well as protecting the privacy of family and friends of the deceased during a time of mourning. See Doc. No. 47, p. 5. On appeal, the Eighth Circuit reversed, finding that its previous opinion in Olmer v. Lincoln, 192 F.3d 1176, 1178 (8th Cir. 1999) was controlling. See Phelps-Roper, 545 F.3d at 692. In Olmer, the Eighth Circuit found that the government had no compelling interest in protecting an individual from unwanted speech outside of the residential context, holding that an ordinance restricting focused picketing of churches and other religious premises violated the First Amendment. Id. at 1182. The Eighth Circuit found on appeal of the present matter that Plaintiff similarly was "likely to prove that any interest the state has in protecting funeral mourners from unwanted speech

12

is outweighed by the First Amendment right to free speech." Phelps-Roper, 545 F.3d at 692.

Plaintiff argues in her summary judgment motion that (1) R.S.Mo. § 578.501 does not suggest on its face what government interest it is supposed to advance; and (2) Olmer still controls. In their opposition, the State Defendants argue (1) this Court has previously found that the state has a significant interest in preserving and protecting the sanctity and dignity of memorial and funeral services, as well as protecting the privacy of family and friends of the deceased during a time of mourning and distress (see Doc. No. 47); and (2) the Eighth Circuit's opinion in Olmer might need to be re-visited, as on March 8, 2010, the Supreme Court granted certiorari in the case of Snyder v. Phelps, No. 09-751, arising out of the Fourth Circuit's decision in Phelps v. Snyder, 580 F.3d 206 (4th Cir. 2009); and (3) the state may have other interests in addition to the ones set forth above, such as "protecting the safety of mourners and protesters at funerals."

Although this Court is sympathetic to Defendants' argument that attendees at a funeral are a captive audience and are deserving of some level of protection, the Court finds that the Eighth Circuit's opinion in Olmer controls. To the extent that the Supreme Court may overrule Olmer when it considers Phelps v. Snyder, that issue is for another day. In regard to State Defendants' argument that the state may have an interest in protecting the safety of mourners and protesters at funerals, the Court agrees that the State Defendants have not demonstrated that this was an issue considered by the legislature at all.[5] Therefore, the Court finds that Defendants have not demonstrated that R.S.Mo. § 578.501 serves a significant government interest. As failure to meet this criteria renders the statute unconstitutional, the Court finds that Plaintiff's motion for summary judgment

---

[5]Frankly, the Court cannot believe that the state was particularly interested in "protecting" the safety of protesters such as Plaintiff when it enacted this law. In particular, the court agrees with Plaintiff that it would be curious for the state to attempt to protect people from the consequences of their speech by criminalizing that speech.

13

(Doc. No. 183) must be **GRANTED** as to this issue. However, given that the Supreme Court may consider a similar issue regarding government interest in Snyder v. Phelps in the near future, the Court will analyze whether R.S.Mo. § 578.501 is narrowly-tailored.

### 2. Narrowly Tailored/Facially Overbroad

When this Court considered this issue in its order denying preliminary injunction (Doc. No. 47), this Court found that Plaintiff had not demonstrated the statute was not narrowly tailored, as the "in front of or about" language had been approved in other contexts and that buffer zones had also been approved in other contexts. On appeal, the Eighth Circuit reversed, pointing out that the cases this Court had relied on using the "in front of or about" language involved stationary locations, whereas Section 578.501 involves a moving procession, and its floating butter-zones provide citizens with no guidance as to what locations will be protest and picket-free zones and at what times. See Phelps-Roper, 545 F.3d at 692-93. The Eighth Circuit further noted that Section 578.501 does not limit itself to activity that targets, disrupts, or is otherwise related to the funeral, memorial service or procession. See id. at 693, citing Olmer, 192 F.3d at 1180.

Plaintiff argues in her suggestions in support of her motion for summary judgment that Olmer remains on point, and the floating buffer zone created by R.S.Mo. § 578.501 is not narrowly tailored to prevent actual interruptions of funeral services. Plaintiff argues that Section 578.501 constitutes a broader restraint on speech than that in the ordinance found unconstitutional in Olmer, in that it bans all types of picketing and protests, not just pickets related to funerals or other focused picketing. The ban does not limit itself to fighting words, disruptive protests, or even to protests related in some way to the funerals, memorial services, or funeral processions. Plaintiff further notes that, unlike the ordinance in Olmer, Section 578.501 applies to traditionally public spaces such as parks. Plaintiff notes that a picket or protest near a funeral home, church, or even a park is at risk of becoming illegal if a funeral or memorial service is held, or if a funeral procession happens to drive by.

14

Plaintiff also argues that Section 578.501 is not narrowly tailored in that it bans certain types of speech regardless of whether funeral attendees welcome the speech and provides no exception for accidental breaches of the buffer zone. Assuming the ordinance is enforced in a viewpoint-neutral manner, as required by the First Amendment, it not only bans protests that may upset funeral attendees, but also those demonstrations that are supportive of funeral attendees or those demonstrations that are completely unrelated to the funeral services. The zone created by the ordinance floats both temporally and geographically, and this moving "bubble" around funeral events gives citizens engaged in lawful protests little, or no, notice that their protest would become illegal should a funeral procession pass.

Defendants respond that the law is narrowly tailored, and does not "burden substantially more speech than is necessary to further the government's legitimate interests." Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 478 (1989). The State Defendants note, "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Frisby, 487 U.S. at 485. Defendants argue that the law is not a general ban on all protesting, but it is aimed at eliminating specific harms–the interruption of funeral services and the protection of mourners and protestors.

At this point, the Court cannot conclude that Section 578.501 is narrowly tailored, as the State Defendants suggest. The Court agrees with Plaintiff that the Defendants have not demonstrated how the statutes are narrowly tailored to eliminate the specific harms of interruption of funeral services and the protection of mourners and protestors. The Court agrees with Plaintiff that Section 578.501 could have the effect of criminalizing speech the mourners want to hear, including speech from counter-protestors to Plaintiff's message.[6]

---

[6] Further, to the extent that the statute is only enforced against Plaintiff and not counter-protestors or others who are in technical violation of the statute, that selective enforcement is constitutionally problematic, as well.

15

As the law burdens substantially more speech than is necessary to further the government's interest, Section 578.501 violates the free speech clause of the First Amendment. Accordingly, Plaintiff's motion for summary judgment must be **GRANTED** on this alternative basis, as well.[7]

        **3.    Ample Alternative Channels for Plaintiff's Message/Vagueness**

The Court finds, as it has already found that Section 578.501 does not advance a significant government interest nor is it narrowly tailored to meet that government interest, it is unnecessary to reach the issue as to whether Plaintiff has ample alternative channels through which she can deliver her message. The Court further finds that it does not need to examine whether the statute is unconstitutionally vague.

    **C.    Count II–Does R.S.Mo. § 578.502 violate Plaintiff's right to free speech under the First and Fourteenth Amendments?**

Plaintiff indicates that R.S.Mo. § 578.502 is peculiar, in that it only becomes effective after Section 578.501 is declared unconstitutional. Plaintiff notes that she has challenged the contingent enactment of this statute in other counts (Counts XII, XIII, and XIV of her Second Amended Complaint); however, she indicates that it would advance judicial economy if the Court considered the constitutionality of this statute concurrently with Section 578.501, as it suffers from the same constitutional defects as Section 578.501. The Court agrees with Plaintiff that Section 578.502 should be considered at this time, and the Court finds that Section 578.502 suffers from the same constitutional defects as Section 578.501. In particular, changing the statutory language from "in front of or about" to "within

---

[7]The Court notes that other statutes regarding funeral protests are more narrowly-tailored, in such a way that they might withstand intermediate scrutiny. See, e.g., 18 U.S.C. § 1388; Md. Code Ann., Criminal Law, § 10-205; Va. Code Ann. § 18.2-415. The Court also notes that the Missouri legislature, in the future, may be able to assert a significant governmental interest that may withstand intermediate scrutiny. See, e.g., Phelps-Roper v. Heineman, 2010 WL 2545780, *8 (D. Neb. 2010)(finding that the state of Nebraska had stated a significant government interest in its funeral protest statute, which was enacted for the purpose of protecting family members attending relative's funeral).

16

three hundred feet of or about" does not cure the deficiencies noted above with respect to Plaintiff's arguments that the statute does not advance a significant governmental interest or is not narrowly tailored to advance that interest. Therefore, Plaintiff's motion for summary judgment on Count II of her Second Amended Complaint is **GRANTED**.

> **D.** **Counts III and IV–Do R.S.Mo. §§ 578.501 and 578.502 violate the free exercise clause of the First Amendment?**

As the Court has already found Sections 578.501 and 578.502 unconstitutional under the free speech clause of the First Amendment, the Court finds that it is unnecessary to reach Plaintiff's arguments as to the free exercise clause. Therefore, the Court finds plaintiff's motion for summary judgment as to Counts III and IV of Plaintiff's Second Amended Complaint to be **MOOT.**

> **E.** **Plaintiff's As-Applied Challenges (Counts VII, VIII, X, and XI)**

Plaintiff has moved for summary judgment on her as-applied challenges in Counts VII, VIII, X, and XI. These counts refer to the application of the various statutes at issue in this case by Defendants Goodwin (Counts VII and VIII) and the Laclede County officials (Counts X and XI). Neither Defendant Goodwin nor the Laclede County Defendants responded to Plaintiff's motion for summary judgment; instead, the Court notes that these parties have filed stipulations for the entry of consent judgment (Doc. No. 27 as to Defendant Goodwin, Doc. No. 129 as to Defendants Hemphill-Wright, Wrinkle, and Laclede County, and Doc. No. 144 as to Defendant Blackburn). The Court deferred entry of the consent judgments until final judgment had been entered as to the constitutionality of Missouri's funeral protest statutes. See Orders, Doc. No. 47 and Doc. No. 141. As the Court is now entering its Order finding Missouri's funeral protest statutes unconstitutional, the Court will be entering under separate cover the proposed consent judgments between Plaintiff and Defendants Goodwin, Blackburn, Hemphill-Wright, Wrinkle, and Laclede County. Accordingly, Plaintiff's motion for summary judgment as to Counts VII, VIII, X and XI will be **DENIED AS MOOT.**

17

### F. Counts XII, XIII, and XIV of Plaintiff's Second Amended Complaint

Counts XII and XIII of Plaintiff's Second Amended Complaint allege that Missouri's funeral protest statutes violate certain provisions of Missouri statutes or Missouri's Constitution. Count XIV alleges that Sections 578.502 and 578.503 are unconstitutionally vague because they provide no notice as to when Section 578.502 will go into effect. As The Court has found that Sections 578.501 and 578.502 are both unconstitutional under the free speech provisions of the First Amendment of the United States Constitution, the Court finds that Counts XII, XIII, and XIV of Plaintiff's Second Amended Complaint are now **MOOT**, and Plaintiff's motion for summary judgment as to these counts is therefore **DENIED AS MOOT.**

### V. State Defendants' Motion for Partial Summary Judgment (Doc. No. 185)

As the Court has already found that the challenged statutes are unconstitutional, the Court finds that Defendants' motion as to Counts XII, XIII, and XIV should be **DENIED AS MOOT.**

### VI. Relief

Plaintiff requests a declaratory judgment in this case that Sections 578.501 and 578.502 are unconstitutional. The Court finds that relief to be appropriate, and therefore the Court declares R.S.Mo. Sections 578.501 and 578.502 to be unconstitutional under the Free Speech Clause of the First and Fourteenth Amendments of the United States Constitution.[8]

Plaintiff further requests nominal damages be awarded as to the defendant local law enforcement officials.[9] However, as the Court is concurrently entering the consent

---

[8] Plaintiff withdraws her request for permanent injunction, in the event the Court finds the statutes unconstitutional. See Doc. No. 184.

[9] Plaintiff notes that the State Defendants (Koster, Nixon and Replogle) are named in their official capacities only, so a claim for nominal damages against them is barred by the Eleventh Amendment.

18

judgments between these parties and Plaintiff (and has denied as moot Plaintiff's motion for summary judgment as to these defendants), the Court finds that an award of nominal damages is not necessary.[10]

## VII. Conclusion

For the foregoing reasons:

(1) Plaintiff's Motion for Summary Judgment (Doc. No. 183) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

(2) Defendants' Motion for Partial Summary Judgment (Doc. No. 185) is **DENIED AS MOOT**;

(3) Defendants' Motion for Leave to File Amended Answer (Doc. No. 265) is **DENIED**; and

(4) All remaining pending motions in this matter are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

/s/ FERNANDO J. GAITAN, JR.
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 08/16/10
Kansas City, Missouri

---

[10] Plaintiff has already agreed within the consent judgments that she will not seek attorneys fees under 42 U.S.C. § 1988 as to the local law enforcement officials.