IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SHIRLEY L. PHELPS-ROPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:06-cv-04156-FJG |
| ) | |
| CHRIS KOSTER, et. al., ) | |
| ) | |
| Defendants. ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Plaintiff is the prevailing party in this action and submits the following suggestions in support of her motion for attorneys' fees and expenses.

**I.     Background.**

This case was initiated after enactment in 2006 of statewide restrictions on pickets and protests near funerals and funeral processions. Plaintiff, a member of the church targeted by the restrictions, filed this suit on July 21, 2006. (Doc. # 1).

With her complaint, Plaintiff filed a motion for preliminary injunction against enforcement of Mo. Rev. Stat. § 578.501. (Doc. # 3). After full briefing, including responses to amicus briefs, the motion was denied on January 26, 2007. (Doc. # 47). An interlocutory appeal followed. (Doc. # 50). After briefing and oral argument, a panel of the Eighth Circuit reversed the denial of preliminary injunction. (Doc. # 56). The Attorney General and Governor filed a petition for rehearing, to which Plaintiff responded. The petition for rehearing was then held in abeyance pending resolution of an *en banc* case – *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds* (05–3093). (Doc. # 58). The panel subsequently granted rehearing. (Doc. # 69). The panel issued a new opinion, again reversing the denial of preliminary injunction. (Doc. # 71). The Attorney General and the Governor filed another petition for rehearing, and after

requesting a response from Plaintiff the Court of Appeals denied the petition. (Doc. # 72).
Thereafter, the Attorney General and the Governor filed a petition for writ of certiorari, which
Plaintiff opposed, and the Supreme Court of the United States denied. (Doc. # 125). This Court
entered a preliminary injunction, which was later amended and modified to enjoin additional
parties, including the Superintendent of the Highway Patrol. (Doc. ## 74, 75, 141).[1]

The state official defendants filed a motion to dismiss. (Doc. # 110). After being fully
briefed, the motion was denied. (Doc. # 141). The remaining parties engaged in significant
discovery. After discovery closed, Plaintiff filed a motion for summary judgment (Doc. # 183)
and the state official defendants filed a cross-motion for partial summary judgment (Doc. # 185).
At the request of the state official defendants, this Court heard oral argument on the cross-
motions in Kansas City. (Doc. # 251). At the oral argument, the state official introduced a new
defense: preemption. They moved for leave to file an amended answer to add an affirmative
defense of preemption. (Doc. # 265). Plaintiff opposed the motion, asserting that the motion was
both untimely and futile. (Doc. # 266). The motion was denied. (Doc. # 282).

While the summary judgment motions were pending, the parties prepared for a jury trial.[2]
A jury trial was scheduled for July 19, 2010. After the jury demand was stricken, the trial date
was continued until August 30, 2010. (Doc. # 262). Plaintiff filed her witness list and in camera
witness list (Doc. ## 191, 194), exhibit list (Doc. # 192), notice regarding deposition
designations and deposition counter-designations (Doc. # 193), proposed voir dire questions and

---

[1] Although some local law enforcement officials were named as defendants, the disputes between Plaintiff and local law enforcement officials were promptly resolved by joint requests for entry of consent judgments. *See* Doc. ## 27, 129. The state official defendants opposed entry of the consent judgments. (Doc. ## 32, 134). They were entered on August 16, 2010. (Doc. # 280, 281).

[2] Plaintiff contested whether the state officials were entitled to a jury trial in this case. (Doc. # 212). After full briefing, this Court struck the jury demand. (Doc. # 262).

jury instructions, motions in limine, and trial brief (Doc. ## 224, 225, 228, 234-249). Her counsel reviewed the pre-trial documents submitted by Defendants and filed objections when necessary. The parties submitted stipulations. (Doc. # 218). Witnesses were interviewed or subpoenaed, and evidence and arguments were reviewed in preparation for trial. On August 16, 2010, this Court granted in part, and denied in part as moot, Plaintiff's motion for summary judgment. (Doc. # 282). It found both § 578.501 and § 578.502 unconstitutional. (*Id*.; Doc. # 283).

On review, the Court of Appeals affirmed this Court's holding that § 578.501 is unconstitutional because it violates the Free Speech Clause. *Phelps-Roper v. Koster*, 713 F.3d 942, 951 (8th Cir. 2013). In addition, while agreeing with this Court that § 578.502 violates the Free Speech Clause as written, the Court imposed a narrowing construction to understand "picketing and other protest activities" "to mean only picketing and protest activities which are directed at a funeral as defined by the statutes." *Id.* Still finding the statute, as written and construed, to not be narrowly tailored, the Court severed the "processions" from the coverage of the statute. *Id*. at 951-52. The Court held that, after severance and as construed, § 578.502 would not violate the Free Speech Clause. *Id*. at 953-54. The Court remanded for consideration of Plaintiff's challenges to the remainder of § 578.502. *Id*. at 954-55.

This Court has now disposed of all of the claims raised in this case. Section 578.501 has been held unconstitutional under the Free Speech Clause. Section 578.502, likewise, is unconstitutional as written, but it may be enforced as narrowly construed by the Court of Appeals and with its coverage of "processions" severed. Having altered the relationship between the parties as a result of judicial orders, Plaintiff now seeks an award of attorneys' fees and costs.

**II.     Availability of Attorneys' Fees – Plaintiff is the Prevailing Party.**

The same federal law that prohibits deprivation of constitutional rights by state actors provides for an award of attorneys' fees to prevailing plaintiffs. *See* 42 U.S.C. § 1988. The Eighth Circuit has articulated the important public policy underlying the fee-shifting provisions implicated by successful § 1983 litigation:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' " S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See Id*. A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400 (1968).
>
> In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

*Casey v. City of Cabool,* 12 F.3d 799, 805 (8th Cir. 1993) (alterations in original).

The availability of attorneys' fees to successful litigants in civil rights cases serves two significant purposes. First, the availability of fees ensures effective access to the judicial process for litigants with meritorious claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Casey*, 12 F.3d at 805. Second, civil rights litigation serves an important public purpose by protecting and clarifying important constitutional rights. *Milton v. Des Moines*, *Iowa*, 47 F.3d 944 (8th Cir. 1995).

According to the Eighth Circuit, "[t]o obtain 'an award of litigation costs,' a party must be a 'prevailing' or 'successful' party, i.e., 'one who has been awarded some relief by the court.'" *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 909 (8th Cir. 2012) (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 603 (2001)). Prior to filing this lawsuit, Plaintiff was subject to § 578.501. (Section 578.502 was, by its own terms, not in effect until § 578.501 was declared unconstitutional. Mo. Rev. Stat. § 578.503). Plaintiff succeeded in obtaining a judicially enforceable determination that § 578.501 is unconstitutional, first with a preliminary injunction in January 2009 and then with a decision on the merits, which was affirmed on appeal. Where a preliminary injunction is granted and not undermined by the result on the merits, this alone is sufficient to denote a plaintiff as the prevailing party. *See Rogers Grp., Inc.*, 683 F.3d at 910. Here, in addition, Plaintiff has secured a judgment on the merits. Section 578.501 has not been enforced since January 2009, as a result of Plaintiff's success in this case. Section 578.502 became effective only in 2013 after Plaintiff succeeded on the merits of her claim that § 578.501 was unconstitutional and the Attorney General notified the Revisor of Statutes. Even before § 578.502 ever went into effect, however, its scope was narrowed as a result of Plaintiff's further success in this litigation. The Eighth Circuit narrowed the scope of the statute by imposing a narrowing construction on the pickets and protest reached by the statute and by severing funeral processions from the statute's coverage. In other words, the § 578.502 that Plaintiff challenged is no longer the law with which she must comply. The Court's actions changed the legal relationship between the parties. *See Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, 214 F. App'x 572, 576 (6th Cir. 2007) (finding a "judicially sanctioned change in the legal relationship"

where severance results in "law with which the Plaintiffs must comply is not the law which the Plaintiffs challenged because [it] no longer includes two provisions").

Because § 578.501 has definitively been declared unconstitutional and what remains of § 578.502 is different than the § 578.502 that Plaintiff challenged (and more protective of her First Amendment rights), this lawsuit has resulted in judicially sanctioned changes in the relationship between the parties such that Plaintiff is the prevailing party.

### III. Attorneys' Fees – Lodestar Amount.[3]

The general principles governing the award of attorneys' fees are well-settled. First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure. *Hensley*, 461 U.S. at 433. The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984); *accord Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991)(holding that "the lodestar award … is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"); *Casey*, 12 F.3d at 805. In the regard, the Supreme Court stated: "We... take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [§ 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285 (1989).

---

[3] Plaintiff does not seek an award of attorneys' fees against Defendants Goodwin, Blackburn, Laclede County, Wrinkle, or Wright. In exchange for those Defendants' early agreement to consent judgments, Plaintiff agreed to waive any § 1988 claim for attorneys' fees against them. Accordingly, Plaintiff has not included in the hours submitted those related exclusively to her claims against these Defendants. She has, however, included the time required to reply to the remaining defendants' opposition to entry of consent judgments.

A. <u>Hourly Rates</u>.

In setting reasonable attorneys' fees, the touchstone is whether the rate is in line with those prevailing in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1988). The Supreme Court of the United States has "repeatedly stressed that attorney's fees awarded under [§ 1988] are to be based on market rates for the services rendered." *Jenkins by Agyei,* 491 U.S. at 283-84 (*citing Blanchard v. Bergeron,* 489 U.S. 87 (1989); *Riverside v. Rivera,* 477 U.S. 561 (1986); *Blum v. Stenson,* 465 U.S. 886 (1984)). This is the case "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895. The "prevailing market rate method used in awarding fees… shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988)(en banc).

The Supreme Court has held that the lodestar should be calculated based on the attorneys' current rates. In *Jenkins by Agyei*, a case that lasted a mere three years, the Court explained:

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. [T]herefore, … an appropriate adjustment for delay in payment … by the application of current rather than historic hourly rates … is within the contemplation of the statute.

491 U.S. at 283-84.

The background and experience of Phelps-Roper's various attorneys in this case are set forth in the Affidavits of Anthony E. Rothert (Exhibit 1), Benicia Baker-Livorsi (Exhibit 2), and Grant R. Doty (Exhibit 3). Their hourly rates are as follows:

| Attorney | Hourly Rate |
|---|---|
| Anthony E. Rothert | $325.00 |
| Benicia Baker-Livorsi | $275.00 |
| Grant R. Doty | $250.00 |

Mr. Rothert and Mr. Doty are skilled and experienced at litigating issues of constitutional law and, as Ms. Baker-Livorsi has explained in her affidavit, she has discounted by almost ten percent the hourly rate that she charges clients in her ordinary practice because of her relative inexperience in First Amendment litigation. Exhibit 2 at ¶ 10.

These rates are reasonable, especially given that this case involved a specialized and complex area of the law and required Plaintiff to find attorneys knowledgeable in this area of the law who were willing and able to expend significant amounts of time without any promise of compensation other than what this Court might award in the distant future. *See Republican Party of Minnesota v. White*, 456 F.3d 912 (8th Cir. 2006) (approving hourly rates of $400 and $425 in a § 1983 appeal finding a violation of the First Amendment); *Holland v. City of Gerald, Mo.*, 4:08CV707 HEA, 2013 WL 1688300, *4 (E.D. Mo. Apr. 18, 2013) (concluding hourly rate of $450 was reasonable); *Wickersham v. City of Columbia*, 05-4061-CV-C-NKL, 2007 WL 1813194, *1 (W.D. Mo. June 21, 2007) (awarding $400.00 per hour for partner and $250.00 per hour for associate in First Amendment case tried in 2005).

Furthermore, one "purpose for awarding attorney's fees under 42 U.S.C. § 1988 is to provide an incentive for competent and skilled attorneys to take on unpopular cases[.]" *Lucas v. Guyton*, 901 F. Supp. 1047, 1055 (D.S.C. 1995). There is no doubt that Plaintiff, her speech, and this case, are extremely unpopular.

Indeed, this Court recently approved the hourly rate of $325.00 for Mr. Rothert, and $250.00 for Mr. Doty. *See Barrett v. Claycomb*, 2:11-CV-04242-NKL, 2013 WL 6920860, *2-

*3 (W.D. Mo. Dec. 9, 2013). "The average 2012 Missouri attorneys' billing rate is $339/hour." *Comas v. Schaefer*, 10-4085-CV-C-MJW, 2012 WL 5354589, *3 (W.D. Mo. Oct. 29, 2012).[4] The reasonableness of the requested rates is further demonstrated by the affidavits of attorneys Robert Herman and Robert King, who testify that the rates requested are within the market norms based on the requesting attorneys' experience. See Affidavit of Robert Herman (Exhibit 4) and Affidavit of Robert King (Exhibit 5). Indeed, as Mr. Herman attests, the rate requested by Mr. Rothert is low. Ex. 4, at ¶ 10.

For all of these reasons, the hourly rates requested are reasonable under the circumstances of this case.

B. Computation of the Lodestar.

The lodestar is the product of the attorneys' hourly rates times the number of compensable hours expended on the matter. *Hensley*, 461 U.S. at 433. A reasonable fee can be set in this case consistent with established case law and local rates and practices by multiplying the number of compensable hours[5] by the hourly rates of Phelps-Roper' attorneys.

The attorneys' billing records reflect that they billed a combined 976.75 hours on this case over the past eight years. The lodestar is $304,031.25; however, the attorneys have exercised billing judgment to reduce the hours for which they seek compensation by 18.9 hours. Ex. 1 at ¶ 5; Ex. 2 at ¶¶ 7-8; Ex. 3 at ¶¶ 3-4. In particular, they do not seek compensation for the time they spent conferring with one another or work that was unnecessary or redundant. The number of hours reflected in this table is reasonable:

---

[4] A recent survey of billing rates in Missouri, which is attached to Mr. Rothert's affidavit (Ex. 1-B), demonstrates that the rates sought are quite reasonable.

[5] The number of hours worked and hours for which compensation is requested for each attorney is included with his or her affidavit, which incorporates an itemization of the hours and the work for which compensation is not sought.

|  | Hours | Rate | Total |
|---|---|---|---|
| Anthony E. Rothert | 728.3 | $325.00 | $236,697.50 |
| Benicia Baker-Livorsi | 189.45 | $275.00 | $52,098.75 |
| Grant R. Doty | 51.2 | $250.00 | $10,025.00 |
|  |  | Total: | $298,821.25 |

In addition, Phelps-Roper's attorneys have not submitted law clerk or paralegal time for reimbursement. *See Jenkins by Agyei*, 491 U.S. at 285 (holding award of fees for paralegal and law clerk time at market rates permissible). The assistance of law clerks and paralegals reduced the number of attorney hours required for this case and, ultimately, the number of hours for which reimbursement is sought.

This case involved a complex area of the law and was hard-fought (and extensively briefed) at every level of the federal courts. A reduction of the lodestar amount may be appropriate where the plaintiff asserts "distinctly different claims for relief that are based on different facts and legal theories," such that "counsel's work on one claim will be unrelated to his work on another claim." *Hensley,* 461 U.S. at 434–35. In such a case, "no fee may be awarded for services on [an] unsuccessful claim." *Id.* at 435. Where "a plaintiff has achieved only partial or limited success, ... the most critical factor is the degree of success obtained." *Id.* at 436. In other respects, however, Plaintiff secured a judicially sanctioned alteration in her relationship with Missouri officials, based on interrelated facts and alternative legal claims such that further reduction is not appropriate. As the Supreme Court has explained, a reduction for partial success may not be warranted where the lawsuit involved "a common core of facts" or was "based on related legal theories." *Id.* at 435. In such a case, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Id.*

Thus, in a case based on interrelated legal theories or a common factual basis, "[a] plaintiff can be compensated for work on unsuccessful claims if they are sufficiently related to the successful claim." *Marez,* 688 F.3d at 965; *see also Casey,* 12 F.3d at 806 (holding that "[o]nce a party is found to have prevailed, [a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit." (quotation omitted)). In such cases,

> [T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation,.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

*Hensley,* 461 U.S. at 435 (citation omitted). In this case, a fully compensable award is justified.

Plaintiff recognizes the lack of success on her final claim. The lack of success on the claim is attributable to her success in other aspects of this case. The enactment of § 578.502 would not be effective at all had Plaintiff not prevailed. Further, the due process analysis of § 578.502 would have been much different had Plaintiff not succeeded in securing a narrowing construction and severance of the term "processions" from the Court of Appeals. Finally, the vagueness problems with § 578.503 were resolved only after "[t]he Eighth Circuit declared R.S.Mo. § 578.501 unconstitutional on April 26, 2013, and on July 15, 2013, the Attorney General notified the revisor of statutes that R.S.Mo. § 578.501 had been declared unconstitutional." Doc. # 321 at 14. Should a less than fully compensatory fee be appropriate, then the discernible time for a non-prevailing claim is that associated with the briefing on the vagueness claim after the most recent remand from the Eighth Circuit. That constitutes 38.7 hours (36.4 hours for Mr. Rothert and 2.3 hours for Mr. Doty – See Ex. 1-A and Ex. 3-A) and, if

deducted from the lodestar, would lower the appropriate award of fees by $12,405.00 to $286,416.25.

**IV.     Expenses**

Plaintiffs seek and are entitled to recover the expenses incurred in the prosecution of this case. Recoverable expenses include all costs and out-of-pocket expenses of Plaintiffs' attorneys. *Neufeld v. Searle Laboratories*, 884 F.2d 335, 342 (8th Cir. 1989); *see also Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (holding that a reasonable attorneys' fee must include "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys"). In addition to those taxable costs listed and described in Plaintiff's Bill of Costs (Doc. # 323), the affidavit of Anthony E. Rothert itemizes expenses of $4,044.30 that were necessarily and appropriately incurred and paid in this matter by the ACLU of Missouri Foundation.

**V.     Conclusion**

Based on the foregoing considerations, together with those set forth in the accompanying affidavits and other exhibits, this Court should award to Plaintiff attorneys' fees of $298,821.25 plus expenses of $4,044.30 not compensated in Plaintiff's Bill of Costs for the professional efforts expended on Plaintiff's behalf.

                                          Respectfully submitted,

                                          /s/ Anthony E. Rothert
                                          ANTHONY E. ROTHERT
                                          ACLU of Missouri Foundation
                                          454 Whittier Street
                                          St. Louis, Missouri 63108
                                          PHONE: (314) 652-3114
                                          FAX: (314) 652-3112
                                          trothert@aclu-mo.org

                                          ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to all electronic filing participants.

/s/ Anthony E. Rothert